**Opinion issued March 31, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00255-CV**

———————————

**PHILLIP DAVID HASKETT, Appellant**

**V.**

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY AND JOHN WADE, Appellees**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CV-2358**

---

## MEMORANDUM OPINION

Appellant, Phillip David Haskett, proceeding pro se, challenges the trial court's order granting the plea to the jurisdiction filed by appellee, Texas Commission on Environmental Quality ("TCEQ"), in Haskett's suit against TQEQ for "failure to exercise supervisory control." Haskett also challenges the trial court's

order granting the motion for summary judgment filed by appellee, John Wade, in Haskett's suit against Wade for defamation. In four issues, Haskett contends that the trial court erred in granting the plea to the jurisdiction filed by TCEQ, granting the summary-judgment motion filed by Wade, failing to rule on his motions to compel discovery, and failing to construe his petition liberally.

We affirm.[1]

## Background

In his second amended petition, Haskett alleged that on or about August 22, 2011, TCEQ granted the San Leon Municipal Utilities District ("SLMUD") "permission to begin assessing a mandatory fee for 'fire protection services' of $8.00 per month (later raised to $10.00) on each active account" based on a "'Contract and Plan for Fire Suppression Service' . . . between SLMUD and [the San Leon Volunteer Fire Department ('SLVFD')] that [was] originally . . . signed on August 10, 1982 and then subsequently amended several times." According to Haskett, the contract "contained a specific provision that stated [that] SLVFD would conduct an annual certified audit[] and submit that audit to SLMUD for review and approval."

---

[1] We note that Haskett has a related appeal pending before the Court in appellate cause number 01-24-00244-CV, which arises from the same underlying suit. The underlying suit was severed into two separate trial court cause numbers by the trial court. *See Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 63 S.W.3d 795, 795 (Tex. 2001). ("As a rule, severance of an interlocutory judgment into a separate cause makes it final.").

The contract also required SLVFD "to present a monthly report of its activities and expenditures to . . . SLMUD at its monthly public board meeting," which Haskett alleged had last occurred in 2012. Haskett further asserted that the grant of permission by TCEQ to SLMUD to assess the "mandatory fire protection fee" was based on false representations made by SLMUD in an application submitted to TCEQ on or about May 11, 2011.

Haskett also alleged that the 2011 version of Texas Water Code section 49.351(i) required that after TCEQ's approval to assess a "mandatory fire protection fee," an election had to be held to impose the fee. However, according to Haskett, the election that was held was "riddled with irregularities" and kept secret. In November 2011, SLMUD customers received a water bill with a message stating, "The Vol. Fire Dept. fee was voted mandatory and your bill will now reflect the $8.00 fee. Failure to pay will result in disconnection." (Internal quotations omitted.)

According to Haskett, "[a]fter receiving authority to assess [the] monthly mandatory fee," funding to SLVFD "increased substantially," and "by 2015[,] one or more persons with access to the funds," including Keller, began "embezzling the funds." Haskett alleged that funds continued to be misused by SLVFD employees, and a "contractually mandated certified audit" was never conducted.

Haskett further asserted that on May 29, 2020, he wrote SLMUD a letter advising "that he would no longer pay the $10.00 per month mandatory" fee to

3

SLVFD until a certified audit had been completed and made public. Shortly thereafter, Haskett "commence[d] an extended summer vacation" and placed his residential water service on "vacation suspension." (Internal quotations omitted.) While away on vacation, Haskett did not pay the mandatory fee to SLVFD. When Haskett returned from vacation, SLMUD "refused to reinstate [his] water service," and Haskett "was forced to commence using harvested rainwater . . . or water obtained from other SLMUD customers to flush his toilet, and to shower at a health club where he obtained an expensive and otherwise unwanted membership."

In January 2021, Haskett "stated on social media that he intended to file suit against SLMUD over these myriad issues and abuses, for damages relating to his being forced to carry water to his home for basic sanitary uses and for defamation." In response, Andrew Miller, an SLMUD employee, "publicly accused [Haskett] of theft of services for admittedly flushing his toilet without an 'active' water account." According to Haskett, on January 19, 2021, at an SLMUD board meeting, "the matter was discussed in [an] executive session by all five board members," with Miller, Ken Keller, an SLMUD employee, and "SLMUD's legal counsel also participating." On January 26, 2021, "an SLMUD work crew appeared in front of [Haskett's] home . . . and proceeded to dig up and destroy [Haskett's] sewer connection."

4

Haskett further alleged that on March 27, 2021, he attempted to lease his property to another individual, but eventually, the individual voided the lease agreement because he was unable to obtain water services through SLMUD, and Haskett lost revenue. Additionally, a few months later, Miller and other SLMUD employees filed an "anonymous complaint," and Haskett "was charged with [a] criminal violation of county health rules for inhabiting his home without proper sanitary connections." A fine was assessed against Haskett. According to Haskett, SLVFD, SLMUD, and certain SLMUD employees had tried to "run [him] out of town" so that he could not "uncover their various crimes." (Internal quotations omitted.) And "there ha[d] been repeated derogatory comments posted to social media by dozens of individuals who [were] either supporters of or connected to SLMUD and SLVFD[,] which ridicule[d] [Haskett] for 'defecating in a bucket' while allegedly being unable to afford water service at his residence."

Haskett brought a claim against TCEQ for "failure to exercise supervisory control," alleging that TCEQ "completely failed to exercise supervisory control over SLMUD" and had "allowed [SLMUD] to engage in . . . outrageous, thuggish conduct."[2]

---

[2] Haskett also brought claims against SLVFD, SLMUD, and certain SLMUD employees, who are the appellees in his related appeal, pending in appellate cause number 01-24-00244-CV.

As to Wade, Haskett alleged that Wade "publishe[d] a local tabloid" called "the Eagle Point Press," and Wade published "false allegations and personal attacks" about Haskett related to his disputes with SLMUD and SLVFD. According to Haskett, after his "sewer tap was destroyed," Wade published "a photograph of . . . SLMUD['s] work crew destroying [Haskett's] sewer connection, along with intentionally derogatory comments about [Haskett]." This resulted in Haskett's "political detractors . . . spen[ding] . . . several weeks assailing [Haskett's] integrity for 'stealing' SLMUD services" and "applauding the destruction of his sewer tap." Haskett brought a claim against Wade for defamation, asserting that "[b]y publishing photographs . . . of his residence taken during the destruction of his sewer tap and accompanying derogatory comments, Wade ha[d] defamed [Haskett] per se and exposed him to public ridicule." (Emphasis omitted.)

As relief for his claims against TCEQ and Wade, Haskett sought monetary damages and attorney's fees.

TCEQ answered, generally denying the allegations in Haskett's petition. Wade also answered, asserting certain specific denials and affirmative defenses.

TCEQ then filed a plea to the jurisdiction, asserting that the trial court lacked subject-matter jurisdiction over Haskett's claim against TCEQ because it was protected by sovereign immunity and Haskett was unable to establish a waiver of its

immunity.[3] According to TCEQ, Haskett "ha[d] not invoked the limited waiver of sovereign immunity available" under the Texas Water Code[4] or the Texas Tort Claims Act ("TTCA").[5] TCEQ also asserted that that Haskett had "fail[ed] to state a claim [against it] for which relief c[ould] be granted."

In his response to TCEQ's plea to the jurisdiction, Haskett asserted that the "crux of [his] claim[] against TCEQ [was] that [it] failed to exercise proper supervisory control over [its] subordinate entity" SLMUD. According to Haskett, he had complied with the requirements of the TTCA and "duly notified [TCEQ] as required by statute" and his claim fell into the limited waiver of liability provided by Texas Civil Practice and Remedies Code section 101.021 because "property damages deliberately inflicted on [Haskett] were caused by a piece of motor-driven equipment."[6] Haskett also asserted that he had "adequately invoked the limited

---

[3]     *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (state agencies are entitled to sovereign immunity from suit unless legislature has waived such immunity); *A.I. Divestitures, Inc. v. Tex. Comm'n on Env't Quality*, No. 03-15-00814-CV, 2016 WL 3136850, at *3 (Tex. App.—Austin June 2, 2016, no pet.) (mem. op.) (TCEQ entitled to sovereign immunity absent legislative waiver).

[4]     *See* TEX. WATER CODE ANN. §§ 5.351, 5.352.

[5]     *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109.

[6]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) ("A governmental unit of the [S]tate is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law . . . .").

waiver of [s]overeign [i]mmunity available under" Texas Water Code section 5.352.[7]

The trial court granted TCEQ's plea to the jurisdiction and dismissed Haskett's claim against it.

Wade then filed a motion for summary judgment, arguing that Haskett's defamation claim against him failed because Haskett had no "evidence of [an] action by Wade that would justify civil recovery." After Haskett filed a response,[8] the trial court granted Wade summary judgment and dismissed Haskett's claim against him. The trial court's order granting Wade summary judgment constituted a final judgment.[9]

## Pro Se Briefing

As an initial matter, we note that we construe an appellant's pro se brief liberally. *See Giddens v. Brooks*, 92 S.W.3d 878, 880–81 (Tex. App.—Beaumont 2002, pet. denied). Nevertheless, a pro se litigant is held to the same standards as a licensed attorney and must comply with applicable laws and rules of procedure.

---

[7]    TCEQ filed a reply to Haskett's response, and Haskett filed a supplemental response to TCEQ's plea to the jurisdiction.

[8]    Haskett did not attach any evidence to his response.

[9]    *See Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 391 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.) ("Once an order has been entered disposing of all remaining parties and issues, all the orders merge, creating a final and appealable judgment.").

*Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978).  The law is well established that, to present an issue to the Court, an appellant's brief must contain, among other things, a concise, nonargumentative statement of the facts of the case, supported by record references, and a clear and concise argument for the contentions made with appropriate citations to pertinent authorities and the record. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.); *see also* TEX. R. APP. P. 38.1.  Stated differently, an appellant's briefing must put forth specific arguments and substantive analysis showing that the record and law support his contentions on appeal.  *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  "A failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal." *Hooks v. Brenham Hous. Auth.*, No. 01-17-00602-CV, 2018 WL 6061307, at *2 (Tex. App.—Houston [1st Dist.] Nov. 20, 2018, no pet.) (mem. op.).  An appellate court has no duty—or any right—to perform an independent review of the record and applicable law to determine whether there was error below. *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.— Houston [14th Dist.] 2008, no pet.).  With this in mind, we turn to Haskett's issues on appeal.

9

**TCEQ's Plea to the Jurisdiction**

In his first issue, Haskett argues that the trial court erred in granting TCEQ's plea to the jurisdiction because Haskett properly "serve[d] . . . notice of [a] claim on TCEQ thereby . . . properly invok[ing] the [TTCA]" and Haskett's complaint was "appropriately brought under Tex[as] Water Code [section] 5.352."[10]

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including

---

[10] To the extent that Haskett tries to incorporate by reference into his appellant's brief argument and analysis presented in the trial court, this is not sufficient to comply with the appellate briefing rules. *See Equity Indus. Ltd. P'ship IV v. S. Worldwide Logistics, LLC*, No. 14-14-00750-CV, 2016 WL 1267848, at *2 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) ("The appellate rules require [appellant] to file an appellate brief that contains sufficient briefing, and [appellant] may not satisfy this requirement by incorporating by reference into its appellate brief argument and analysis presented in the trial court or by citing such argument and referring this court to it."); *Khan v. Safeco Surplus Lines*, No. 14-13-00024-CV, 2014 WL 3907976, at *5–6 (Tex. App.—Houston [14th Dist.] Aug. 12, 2014, pet. denied) (mem. op.) (holding issue inadequately briefed where appellant "attempt[ed] to incorporate by reference the argument and authorities provided in his responses to [appellee's] motions for summary judgment filed in the trial court").

10

counties, cities, and school districts." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323–24 (Tex. 2006); *see also Odutayo v. City of Houston*, No. 01-12-00132-CV, 2013 WL 1718334, at *2 n.8 & *3 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.).

We interpret statutory waivers of sovereign immunity and governmental immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous. *See LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.034. Without an express waiver of sovereign immunity or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004).

A governmental unit may raise the affirmative defense of sovereign immunity or governmental immunity and challenge the trial court's jurisdiction through a plea to the jurisdiction. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). We review a trial court's ruling on a plea to the jurisdiction de novo. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist*, 212 S.W.3d at 323; *City of Jersey Village v. Killough*, No. 01-20-00823-CV, 2021 WL 5903988, at *3 (Tex. App.—Houston [1st Dist.] Dec. 14, 2021, no pet.) (mem. op.).

11

In its plea to the jurisdiction, TCEQ argued that the trial court lacked subject-matter jurisdiction over Haskett's suit against it because TCEQ was entitled to sovereign immunity and Haskett could not establish that immunity had been waived under the TTCA. TCEQ asserted that the TTCA only waived its sovereign immunity for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of a[] [TCEQ] employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if [TCEQ] would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. According to TCEQ, Haskett's claim against it for "failure to exercise supervisory control" over SLMUD did not fall into either of those categories for which TCEQ's immunity could be waived.

Specifically, TCEQ explained that Haskett had not pled facts in his second amended petition establishing that he had a claim for "any property damage, personal injury, [or] death [that] was proximately caused by an employee of TCEQ, or anyone TCEQ supervise[d], acting within the scope of [his] employment when operating motor-drive equipment or a motor-driven vehicle as would be required

12

under [section] 101.021(1)." And Haskett had not pled facts "that demonstrate[d] a personal injury and death[] that was so caused by a condition or use of tangible personal or real property" or that "TCEQ's supervision caused the condition or use of the tangible person or real property—or the injury and death" as would be required under section 101.021(2). (Internal quotations omitted.) Thus, because Haskett could not establish a waiver of TCEQ's sovereign immunity under Texas Civil Practice and Remedies Code section 101.021, TCEQ's immunity remained intact and Haskett's claim against TCEQ for "failure to exercise supervisory control" had to be dismissed. Haskett, in his briefing on appeal, does not address this argument by TCEQ, which could have served as the trial court's basis for determining that the TTCA did not waive TCEQ's sovereign immunity for Haskett's claim against it.

TCEQ also argued in its plea to the jurisdiction that Haskett could not establish a waiver of sovereign immunity under the TTCA because the TTCA did not "apply to claims which [were] based on the failure of a governmental body to act if the governmental entity [was] either not required by law to perform the act or ha[d] the discretion to decide whether or not to perform the act." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056; *see also City of Houston v. Mohamed*, No. 14-24-00169-CV, 2025 WL 556452, at \*4 (Tex. App.—Houston [14th Dist.] Feb. 20, 2025, no pet.) (mem. op.) ("The TTCA's waiver of immunity does not apply to claims based on a governmental unit's failure to act when no particular action is

13

required by law. This 'discretionary function' exception is designed to avoid judicial review of governmental policy decisions." (internal citations omitted)). According to TCEQ, its "ongoing supervision of SLMUD [was] discretionary," and as such, Texas Civil Practice and Remedies Code section 101.056 preserved its immunity in Haskett's suit against it for "failure to exercise supervisory control" over SLMUD. Haskett, in his briefing on appeal, does not address this argument by TCEQ, which also could have served as the trial court's basis for determining that the TTCA did not waive TCEQ's sovereign immunity for Haskett's claim against it.

When a trial court sustains a plea to the jurisdiction without specifying its grounds for doing so, an appellant must challenge each independent ground asserted in the plea. *Deadmon v. Dall. Area Rapid Transit*, 347 S.W.3d 442, 445 (Tex. App.—Dallas 2011, no pet.); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Here, the trial court could have determined that the TTCA did not waive TCEQ's sovereign immunity because Haskett's claim against TCEQ for "failure to exercise supervisory control" over SLMUD did not fall into the categories under Texas Civil Practice and Remedies Code section 101.021 which would have permitted TCEQ's immunity to be waived. The trial court also could have determined that the TTCA did not waive TCEQ's sovereign immunity for Hackett's claim for "failure to exercise supervisory control"

14

over SLMUD because the "discretionary function exception"[11] to the TTCA's waiver of immunity applied. Neither of these grounds are challenged by Haskett on appeal, and because Haskett has failed to address each independent ground asserted in TCEQ's plea to the jurisdiction regarding waiver of immunity under the TTCA, we must affirm the trial court's ruling that the TTCA did not waive TCEQ's sovereign immunity for Haskett's claim against it.[12] *See Deadmon*, 347 S.W.3d at 445 ("Because appellant has not challenged all of the grounds alleged in the plea to the jurisdiction which could, if meritorious, support the order granting the plea, we overrule appellant's sole issue.").

Additionally, in its plea to the jurisdiction, TCEQ argued that the trial court lacked subject-matter jurisdiction over Haskett's suit against it because TCEQ was entitled to sovereign immunity and Haskett also could not establish that immunity

---

[11]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056.

[12]     In its plea to the jurisdiction, TCEQ also argued that the TTCA could not waive its sovereign immunity because Haskett had not provided TCEQ with notice as required by Texas Civil Practice and Remdies Code section 101.101. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101; *Anderson v. Waller Cnty. & Waller Cnty. Sheriff's Dep't*, No. 01-20-00097-CV, 2021 WL 3042677, at *6 (Tex. App.—Houston [1st Dist.] July 20, 2021, pet. denied) (mem. op.) ("To take advantage of the TTCA's limited waiver of immunity, a plaintiff must comply with the TTCA's notice requirements. A plaintiff's failure to provide the statutorily required notice deprives the trial court of jurisdiction and requires the court to dismiss the plaintiff's case." (internal citations omitted)); *Bexar Cnty. v. Votion*, No. 04-14-00629-CV, 2015 WL 2405364, at *2 (Tex. App.—San Antonio May 20, 2015, no pet.) (mem. op.) (TTCA requires plaintiff to notify governmental unit of claim in order to invoke waiver of immunity). This is the only argument that Haskett addresses in his briefing related to whether the TTCA waived TCEQ's sovereign immunity.

15

had been waived under the Texas Water Code. *See, e.g.*, *IT-Davy*, 74 S.W.3d at 858–59 (concluding Texas Water Code sections 5.351 and 5.352 did not waive sovereign immunity). TCEQ argued that Haskett had not "invoked the limited waiver of sovereign immunity available under Tex[as] Water Code [section] 5.352" because section 5.352 only "allow[ed] a party to seek mandamus relief for TCEQ's or the executive director's failure to act" and Haskett had not pled for such relief in his second amended petition.[13] (Emphasis and internal quotations omitted.) *See* TEX. WATER CODE ANN. § 5.352 ("A person affected by the failure of the commission or the executive director to act in a reasonable time on an application to appropriate water or to perform any other duty with reasonable promptness may file a petition to compel the commission or the executive director to show cause why it should not be directed by the court to take immediate action"); *Tex. Comm'n on*

---

[13] TCEQ further asserted that even if Haskett had properly pled for relief under Texas Water Code section 5.352, Haskett's request for relief would fail because "[m]andamus relief [was] reserved for compelling ministerial duties and [was] not a tool for compelling the exercise of discretion," and in this case, TCEQ had not failed to act, but "instead supervised . . . SLMUD in a manner that complie[d] with [the] Texas Water Code and its own rules." *See Tex. Comm'n on Env't Quality v. Kelsoe*, 286 S.W.3d 91, 94 (Tex. App.—Austin 2009, pet. denied) ("[Texas Water Code] [s]ection 5.352 allows a party to seek mandamus relief for TCEQ's or the executive director's failure to act. . . . Section 5.352 does not allow for mandamus relief from TCEQ's or the executive director's unfavorable decisions or actions, but from their failure to act at all." (emphasis omitted)); *see also In re Walker*, 595 S.W.3d 841, 842 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) ("A writ of mandamus will issue to compel the performance of a ministerial act or duty. An act is ministerial when the law clearly spells out a duty to be performed by a public official with such certainty that nothing is left to the official's discretion." (internal citations omitted)).

16

*Env't Quality v. Kelsoe*, 286 S.W.3d 91, 94 (Tex. App.—Austin 2009, pet. denied) ("[Texas Water Code] [s]ection 5.352 allows a party to seek mandamus relief for TCEQ's or the executive director's failure to act." (emphasis omitted)); *see also Larry Koch, Inc. v. Tex. Nat. Res. Conservation Comm'n*, 52 S.W.3d 833, 837 (Tex. App.—Austin 2001, pet. denied) (sovereign immunity bars actions against State unless "they come within the class of cases described in section 5.352 of the Texas Water Code, wherein the legislature consented to suits of the kind described therein"). Haskett, in his briefing on appeal, does not address TCEQ's argument that Haskett could not establish that TCEQ's sovereign immunity had been waived under Texas Water Code section 5.352 because Haskett had not sought mandamus relief in his second amended petition.

Further, TCEQ, in its plea to the jurisdiction, argued that Haskett had not "invoked the waiver of sovereign immunity available under Tex[as] Water Code [section] 5.351" because he had failed to cite section 5.351 in his second amended petition and he could not establish the "prerequisites for relief under th[at] section," including "meeting the 30-day deadline for filing" and "exhaustion of administrative remedies." *See* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity."); TEX. WATER CODE ANN. § 5.351 ("A person affected by a ruling, order, decision, or other act of the commission may file a petition to review, set aside, modify, or

17

suspend the act of the commission. . . . A person affected by a ruling, order, or decision of the commission must file a petition within 30 days after the effective date of the ruling, order, or decision. A person affected by an act other than a ruling, order, or decision must file a petition within 30 days after the date the commission performed the act."); *see also Tex. Water Comm'n v. Dellana*, 849 S.W.2d 808, 809–10 (Tex. 1993) ("Section 5.351 of the Texas Water Code authorizes judicial review of Water Commission decisions . . . [b]ut only a party that has exhausted all available administrative remedies may seek judicial review of an agency decision."); *Tex. Comm'n on Env't Quality v. Bonser–Lain*, 438 S.W.3d 887, 894 (Tex. App.—Austin 2014, no pet.) ("[S]ection 5.351's waiver of [TCEQ's] immunity is limited to administrative actions that are regulatory in nature and only upon the exhaustion of all administrative remedies."); *City of Austin v. Tex. Comm'n on Env't Quality*, 303 S.W.3d 379, 382 (Tex. App.—Austin 2009, no pet.) ("This court has held that a plaintiff's failure to comply with section 5.351(b) deprives the trial court of jurisdiction over the plaintiff's petition for judicial review."); *Walter West, P.E. v. Tex. Comm'n on Env't Quality*, 260 S.W.3d 256, 260 (Tex. App.—Austin 2008, pet. denied) ("Section 5.351 of the [Texas] [W]ater [C]ode establishes the proper procedures for obtaining judicial review of [TCEQ's] decision . . . ."). Haskett, in his briefing on appeal, does not address TCEQ's argument that Haskett could not establish that TCEQ's sovereign immunity had been waived under Texas Water

Code section 5.351. Haskett's appellant's brief makes no reference to Texas Water Code section 5.351 at all.

Here, the trial court could have determined that Texas Water Code section 5.352 did not waive TCEQ's sovereign immunity because Haskett had not sought mandamus relief in his second amended petition. The trial court also could have determined that Texas Water Code section 5.351 did not waive TCEQ's sovereign immunity. Neither of these grounds are challenged by Haskett on appeal, and because Haskett has failed to address each independent ground asserted in TCEQ's plea to the jurisdiction regarding waiver of immunity under the Texas Water Code, we must affirm the trial court's ruling that the Texas Water Code did not waive TCEQ's sovereign immunity for Haskett's claim against it. *See Deadmon*, 347 S.W.3d at 445 ("Because appellant has not challenged all of the grounds alleged in the plea to the jurisdiction which could, if meritorious, support the order granting the plea, we overrule appellant's sole issue.").

We overrule Haskett's first issue.

**Wade's Summary-Judgment Motion**

In his second issue, Haskett argues that the trial court erred in granting Wade summary judgment because "the [trial] [c]ourt gave essentially zero consideration to the merits of [Haskett's] arguments opposing the . . . motion."

19

An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). In his appellate briefing, Haskett has wholly failed to provide substantive analysis or legal authority to support his complaint that the trial court erred in granting Wade summary judgment.

Accordingly, we hold that Haskett has waived, due to inadequate briefing, any complaint about the trial court's granting of summary judgment on his claim against Wade. *See Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied) (appellate court cannot remedy deficiencies in appellant's brief for him).

**Motions to Compel Discovery**

In his third issue, Haskett argues that the trial court erred in not ruling on his motions to compel discovery and "allowing . . . Wade to refuse to submit to depositions" because the court "utterly failed to attend to discovery at all" and "an objective observer could easily conclude that the [trial] [c]ourt had come to an early opinion that [Haskett's] entire case was baseless."

20

As previously noted, Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by [appropriate] legal citations." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners*, 373 S.W.3d at 75; *Huey*, 200 S.W.3d at 854.

Related to his third issue, Haskett, in his briefing, does not provide this Court with appropriate argument, analysis, discussion, or citation to proper legal authority. *See* TEX. R. APP. P. 38.1(i); *Richardson v. Marsack*, No. 05-18-00087-CV, 2018 WL 4474762, at *1 (Tex. App.—Dallas Sept. 19, 2018, no pet.) (mem. op.) ("Our appellate rules have specific requirements for briefing," including requiring "appellants to state concisely their complaints, to provide succinct, clear, and accurate arguments for why their complaints have merit in law and fact, to cite legal authority that is applicable to their complaints, and to cite appropriate references in the record."); *Huey*, 200 S.W.3d at 854 ("We have no duty to brief appellant's issue

21

for her.  Failure to cite to applicable authority or provide substantive analysis waives an issue on appeal."); *see also Hopes–Fontenot v. Farmers New World Life Ins. Co.*, No. 01-12-00286-CV, 2013 WL 4399218, at *1 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) (mem. op.) (pro se litigant must properly present her case on appeal; we "may not make allowances or apply different standards for litigants appearing without . . . counsel").

Accordingly, we hold that Haskett has waived, due to inadequate briefing, his complaint about the trial court's purported failure to rule on his motions to compel and its purported failure to require Wade to submit to a deposition.

## Liberal Construction

In his fourth issue, Haskett argues that the trial court erred in not construing his petition liberally to include a request for declaratory judgment that the "[f]ire [p]rotection [f]ee" could not be enforced because "[d]efendants"[14] had "failed to comply with Texas statute[s] and that such failure negate[d] any claimed right to force [Haskett] to pay the unlawfully assessed [f]ire [p]rotection [f]ee."[15]

This section of Haskett's appellant's brief appears to be a direct copy and paste from his brief filed in appellate cause number 01-24-00244-CV.   Haskett's

---

[14]    Haskett's briefing on this issue refers to SLVFD and SLMUD as "[d]efendants," rather than TCEQ and Wade.

[15]    It is also unclear the remedy Haskett believes he would be entitled to if this Court were to sustain his fourth issue.

22

briefing on his "liberal construction" issue complains about SLVFD and SLMUD, who are not parties to this appeal. It does not mention TCEQ or Wade.

Accordingly, we hold that Haskett's fourth issue is waived due to inadequate briefing.[16] *See, e.g.*, *Solano v. Landamerica Commonwealth Title of Fort Worth, Inc.*, No. 2-07-152-CV, 2008 WL 5115294, at *1 n.1 (Tex. App.—Fort Worth Dec. 4, 2008, no pet.) (mem. op.) (considering issues inadequately briefed and not addressing merits where issues "relate[d] to parties included as defendants at the trial court level that [were] not parties to th[e] appeal").

## Conclusion

We affirm the orders of the trial court.

Kristin Guiney
Justice

Panel consists of Justices Rivas-Molly, Guiney, and Morgan.

---

[16] We note that we have addressed Haskett's "liberal construction" complaint in our memorandum opinion in his related appeal. *See Haskett v. San Leon Mun. Water Dist.*, No. 01-24-00244-CV, slip op. at 22–25 (Tex. App.—Houston [1st Dist.] Mar. 31, 2026, no pet. h.) (mem. op.).